No. 48,057

STATE OF KANSAS, *Appellee*, v. TERRY L. MCCLAIN, *Appellant*.

(551 P. 2d 806)

Opinion filed June 12, 1976.

*Ira R. Kirkendoll*, of Topeka, argued the cause and was on the brief for the appellant.

*Gene M. Olander*, district attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Randy L. Baird*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is a direct appeal by the defendant, Terry L. McClain, from convictions of murder in the first degree in violation of K. S. A. 1973 Supp. 21-3401 and aggravated robbery in violation of K. S. A. 1973 Supp. 21-3427.

Defendant raises four points. He contends that the trial court erred in permitting a Topeka police officer, Lieutenant Davis, to testify about the reading of the "*Miranda* warning" to the defendant by another police officer, Corporal Meyer, who was not called as a witness. Defendant objects to the testimony on the ground that it was hearsay. He thus concludes that a proper foundation was not laid for the admission of his statement. He contends that the court erred in admitting a statement he made to Deputy Williams, since Williams did not advise defendant of his rights; Williams knew that defendant was in a depressed state, and Williams knew that McClain was represented by an attorney who was not present. He contends that the court erred in failing to declare a mistrial

because of improper remarks made during the state's closing argument. And finally, he contends that his trial counsel was incompetent and ineffective.

The facts of the offense are not important to a determination of the questions raised. The bullet-riddled body of Gene Scott, an area manager for the Seven-Eleven stores, was discovered lying in a ditch in rural Shawnee County, Kansas, on July 9, 1974. Apparently some $5000 had been taken from Scott. The defendant is a former employee of the food chain. He was arrested a few days later and was charged with murder and robbery.

He was interviewed by Lieutenant Frank Davis of the Topeka Police Department. Davis testified that he was assigned to interview the defendant. Davis, Corporal Meyer and the defendant were present in M-Squad headquarters. Davis was permitted to testify, over objection, that Corporal Meyer advised defendant of his rights by reading the *Miranda* warning "as printed on our blue card." Davis testified fully as to the rights covered in the warning which was read, and that McClain indicated to Davis and Meyer that he understood those rights.

Defendant objected to Davis' testimony concerning the advice of rights on the grounds that it was hearsay, and he urges that here as his first point on appeal. The state counters that the testimony was not hearsay, but if it was hearsay then it falls within exceptions to our hearsay rule, K. S. A. 60-460 (*d*), as a contemporaneous statement. Before examining the exceptions we turn first to the definition of hearsay evidence contained in the statute. It states that hearsay evidence is "Evidence of a statement which is made other than by a witness while testifying at the hearing" and which is *offered to prove the truth of the matter stated.*" (Emphasis supplied.)

2 Wharton's Criminal Evidence (13th Ed.) § 274, states the rule as follows:

"An extrajudicial statement is inadmissible as hearsay only when offered as evidence of the truth of the matter to which it relates. If the statement is offered merely to show the fact of its having been made, it is admissible through the person who heard it. . . ."

6 Wigmore on Evidence (3d Ed.) § 1766, states:

". . . The essence of the Hearsay rule is the distinction between the testimonial (or assertive) use of human utterances and their nontestimonial use.

"The theory of the Hearsay rule . . . is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be

received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. . . ."

And, see, 2 Jones on Evidence (6th Ed.) § 8:6 which gives the following explanation:

"If a statement previously made out of court is offered in evidence through a witness . . . not for the purpose of establishing the truth of the matter stated, but merely for the purpose of establishing the fact that the statement was made, the evidence is admissible, if it is relevant, and it is not subject to the exclusionary impact of the hearsay rule.

"One prominent class of such statements [is] often referred to as verbal acts . . ."

In *State v. Rhoten,* 174 Kan. 394, 400, 257 P. 2d 141, we held that the testimony of an officer that he heard statements such as "Place your bets" and "New man shooting" emanating from a building in which it was alleged that a dice game was in progress was not hearsay but was original evidence, under the rule set forth in § 1766 of Wigmore, supra.

Clearly the state was not attempting to prove the truth of the matter stated, viz., the *Miranda* warnings. The evidence was offered for the purpose of establishing that the warnings were stated and explained to the defendant prior to the interview. The witness heard the warnings read and he may say so.

We conclude that the testimony of Lieutenant Davis was not hearsay. The trial court, after an extensive *Jackson v. Denno* hearing out of the presence of the jury, determined that defendant's statement was entirely voluntary, and permitted both Lieutenant Davis' testimony as to the advice of rights, and defendant's subsequent statement, to go to the jury. We find no error in the admission of the testimony, and none in the admission of defendant's statement.

McClain's second complaint is that the trial court erroneously admitted into evidence statements he made to Deputy Sheriff Williams while he was in custody, without a showing having been made that he was advised of his rights. He argues that Williams knew that he was depressed; that Williams had heard that he had attempted suicide; and that Williams was aware that he was represented by counsel and made no attempt to have his counsel present at the time of the interview. The record reveals that Deputy Williams was at the time working in the narcotics and vice department

of the Shawnee County sheriff's office. He was also assigned to the security detention at the jail. Defendant approached Williams on November 28, 1974, and asked Williams if he had a few minutes to talk with him. Williams stated that he was busy and defendant asked if he could get back and talk to him the next day. On the following day Williams was escorting two other prisoners when defendant approached him and the conversation to which defendant now makes objection occurred. Williams was not assigned to investigate the charges against the defendant and had never interrogated him. On the occasion in question the record is clear that the defendant initiated the conversation and made voluntary statements to Williams. The record further discloses that defendant had been advised previously as to his *Miranda* rights. The trial court, in ruling upon the admissibility of the conversation between defendant and Deputy Williams at the conclusion of the *Jackson v. Denno* hearing, said:

"THE COURT: . . . The evidence here has been that the statement was made at the request of the defendant. He initiated the conversation. There is no evidence to show that in any way that was not his free and voluntary act. The fact that his attorney may not have wanted him to talk to anyone in the jail is not the controlling factor here. . . . [T]he defendant . . . had previously been advised of his rights and there is no showing that it was other than a completely voluntary statement. The fact that he might have been depressed—being placed under a murder charge would be depressing and incarceration in the jail. There was no showing that there was any interference with his thought processes such as to deprive him of the ability to make a voluntary statement. So the Court finds that the testimony can be admitted."

The defendant relies upon cases where investigative agents have conducted planned interrogations of an accused in custody without notifying his counsel. Such cases are not persuasive where, as here, a person in custody initiates a conversation with law enforcement officers and makes voluntary statements. The trial court's comments on the evidence were correct, and its ruling admitting the testimony was likewise proper.

Defendant next contends that the trial court erred in not declaring a mistrial after the prosecutor made the following statement to the jury in closing argument:

". . . Ladies and gentlemen, there's been everything here all through this case to show a malicious disposition by this defendant towards Mr. Scott; and this is just the last step in his malice toward Mr. Scott by trying to cast this whole thing off onto Mr. Scott, trying to clean his own skirts, if you please. And I'll ask you conscientiously as jurors of this community—Don't let the defendant get away with this one too. . . ."

Counsel for the defendant then requested a mistrial, contending that the argument was extremely prejudicial and improper. The trial court overruled the objection and did not admonish the jury to disregard the comment.

Defendant's testimony at the trial was to the effect that Scott, the deceased, had been bilking his employer; that Scott planned the activity which resulted in his death; that Scott inveigled the defendant to assist him in carrying out the plan; that the defendant attempted to withdraw, whereupon Scott pulled a revolver and pointed it at defendant's head; that a scuffle ensued and the firearm accidentally discharged.

If the jury believed defendant's testimony that Scott had planned the robbery, it could well have believed that Scott's death was accidental. Therefore, it was the prosecutor's argument that the defendant's contention that he and Scott were partners was a fabrication, as was his claim that the firearm discharged accidentally. Scott was found to have suffered eight bullet wounds; defendant was unable to recall how more than one bullet was discharged. Under these facts and circumstances we conclude that the prosecutor's remarks amounted to fair comment upon the evidence and did not exceed the scope of the issues presented in the case.

Defendant's final point is that he was denied the effective assistance of counsel. He argues that such incompetency is disclosed by the failure of his counsel to secure a ruling upon his motion for change of venue prior to the conclusion of the *voir dire;* and by the failure of his counsel to be prepared to proceed with his defense immediately upon close of the state's evidence. The record discloses that the state rested at about noon on a Thursday. Defendant's counsel had anticipated that the state would not complete the presentation of its evidence until Friday, and counsel had subpoenaed defense witnesses in for the following Monday. The court granted a recess from about two o'clock on Thursday afternoon until Friday morning, at which time opening statements were made on behalf of the defense, and defendant's evidence was then presented.

With reference to the motion for change of venue, the record indicates that the motion was adequately prepared and presented, taken under advisement by the court, and ruled upon at the conclusion of the *voir dire.* Nothing in the record indicates incompetency by counsel for the defendant.

Defendant notes the test for adequacy of counsel found in *State v. Wheeler*, 215 Kan. 94, 96, 523 P. 2d 722, wherein this court, quoting from *Winter v. State*, 210 Kan. 597, 603, 502 P. 2d 733, said:

"'. . . To be a denial of an accused's constitutional rights it must clearly appear that the representation of the accused was wholly ineffective and inadequate. . . .'"

Nevertheless, defendant urges that this court abandon this test in favor of the test found in *Beasley v. United States*, 491 F. 2d 687, in which the Sixth Circuit Court of Appeals held:

". . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law . . ." (p. 696.)

By either standard the efforts of defendant's trial counsel did not deny him effective assistance of counsel. The trial was not a sham or a mockery. Defendant was adequately represented by competent counsel. We find no error.

The judgment of the trial court is affirmed.