IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,844

STATE OF KANSAS,
*Appellee*,

v.

DARRICK S. HARRIS,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 21-2512 does not require a district court to order DNA testing a defendant does not ask for.

2.

K.S.A. 21-2512 does not impose a duty on the State to retain physical possession of nonbiological evidence it previously gathered in a case.

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Submitted without oral argument February 3, 2023. Opinion filed June 21, 2024. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, was on the briefs for appellant.

*Steven J. Obermeier,* assistant solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: Darrick S. Harris was convicted of first-degree murder of a guard and aggravated battery of another guard committed during a prison melee in 1993. He is serving a hard 40 life sentence for the murder and a 15-years-to-life sentence for the aggravated battery. This court affirmed Harris' convictions in *State v. Harris*, 259 Kan. 689, 915 P.2d 758 (1996). The facts underlying the conviction are set out in that opinion.

Under K.S.A. 21-2512, Harris recently petitioned the district court for forensic testing of objects—weights, billiard balls, and clothing—used in the murder. Harris hoped such testing would locate currently unknown biological material on those objects, and that this biological material could then be subject to DNA testing. In its response, the State claimed it no longer had possession of the items. An extensive search, including requests to the KBI, the Department of Corrections, the Leavenworth County Attorney's Office, and both the district and appellate court clerks' offices, failed to produce the items or provide any information about where the items were located. The State noted that a few biological swabs existed, including a swab of the steel weight. In responsive pleadings, however, Harris insisted he was not seeking retesting of the swabs.

At a hearing, the district court determined Harris' motions were moot because none of the items that he sought to have tested were still in the State's actual or constructive possession. Harris followed up on the mootness ruling by filing a motion requesting discharge from incarceration. He alleged that the State's inability to comply with his request for DNA testing created an adverse inference that his DNA was not present, which should be deemed sufficient to constitute exoneration.

At a subsequent hearing, various individuals who had or might have had custodial responsibilities for the missing weight testified about what might have happened to it.

2

The gist of their testimony was that the Department of Corrections had policies and procedures for tracking evidence in its possession and for disposing of evidence no longer deemed necessary for cases, but those policies and procedures had inexplicably not been followed with the steel plate and other physical evidence. The witnesses testified they had searched extensively for the plate without success and had no idea what might have become of it.

Following the evidentiary hearing and argument, the district court denied the motion to release Harris from custody, holding there was no evidence the State acted in bad faith in failing to preserve the evidence. Harris took an appeal directly to this court under K.S.A. 22-3601(b)(3). As explained below, we affirm the district court as being right for the wrong reason.

DISCUSSION

On appeal, Harris' claim for relief arises squarely under the due process protections afforded by the Fourteenth Amendment to the United States Constitution. Essentially, Harris argues that the State's failure to retain physical evidence—the steel weight in this instance—deprived him of a statutory remedy and thus violated his due process rights. Secondarily, Harris argues the district court erred by not sua sponte ordering the DNA testing of the biological material that was in the State's possession.

We can dispose of the second issue first, in summary fashion. Below, Harris not only did not argue for testing of the swabs, he explicitly informed the court it was not what he was seeking. In district court briefing, he announced: "Defendant is not seeking the retesting of the blood stains that were previously tested. Defendant is seeking testing of the objects (i.e., clothing, weight plates, and billiard balls) for the presence of biological material other than blood, such as skin cells, etc. This kind of testing was never

3

done." K.S.A. 21-2512 does not require a district court to order testing a defendant does not ask for. There is therefore no basis for appellate relief with respect to the biological material in the State's possession.

As for Harris' spoliation claim, the parties and the district court agreed below that a due process analysis under *Arizona v. Youngblood* was appropriate. 488 U.S. 51, 57-58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). That case addressed a pretrial loss of potentially exculpatory evidence. In *Youngblood*, the Supreme Court held that a defendant's due process right to have access to potentially exculpatory evidence before trial is implicated only when state actors lose such evidence by exercising bad faith. 488 U.S. at 57-58. And Kansas caselaw has followed the *Youngblood* rule. Unless a defendant shows bad faith on the part of the police, the failure to preserve potentially useful evidence before trial does not constitute a denial of due process. *State v. Johnson*, 297 Kan. 210, 218, 301 P.3d 287 (2013).

Thus, the district court elected to submit the facts to a due process analysis. It conducted a hearing and ultimately concluded the State's various custodial agencies did not act in bad faith. But a recent decision from this court makes it clear that Harris has no statutory spoliation claim under K.S.A. 21-2512 with respect to nonbiological material that may have been in the State's possession at one time. See *State v. Angelo*, 316 Kan. 438, 518 P.3d 27 (2022). Without any statutory basis for his spoliation claim, Harris cannot hitch his broader due process caboose to the engine of our state postconviction DNA-testing statute.

K.S.A. 21-2512 permits defendants convicted of first-degree murder or rape to petition for DNA testing of biological material related to the investigation or prosecution that resulted in the conviction. Before such testing can be ordered, the biological material

4

to be tested must be in the State's possession. As we held in *Angelo*, "the scope of K.S.A. 2021 Supp. 21-2512 is not unlimited." 316 Kan. at 451. One of the statute's boundaries is that it

"limits the scope of testing to '*any biological material*' that is related to the case, in the actual or constructive possession of the State, and which was not previously tested or can be retested with new DNA techniques that are more accurate and probative. . . . Eligible petitioners may request DNA testing of biological material only. The plain language of subsection (a) does not contemplate or provide for testing of other physical evidence to determine whether biological material is present." 316 Kan. at 452.

With this in mind, we went on to explain:

"As for the State's preservation duty, once the prosecution has notice of the petition, it must take necessary steps to ensure that 'biological material that *was secured* in connection with the case is preserved.' K.S.A. 2021 Supp. 21-2512(b)(2). This statutory language is important in two respects. First, like subsection (a), it focuses on 'biological material' specifically, rather than items of evidence generally. Second, the plain language requires the State to preserve only biological material that 'was secured in connection with the case.' K.S.A. 2021 Supp. 21-2512(b). The Legislature's use of the past-tense phrase, 'was secured,' makes clear the Legislature intended the State only preserve the 'biological material' it previously secured in its investigation or prosecution of the defendant. The plain language cannot be read to impose a duty on the State to call its crime scene investigators back in to examine or re-examine the physical evidence and determine whether any of those items contain biological material that the prosecution had not previously 'secured.' [Citations omitted.]" 316 Kan. at 453-54.

The statutory framework as explained in *Angelo* makes clear that the State's duty to preserve evidence begins after a petitioner files an allegation that biological material exists which would satisfy the statutory threshold requirements. The State has no duty under the statute to re-examine the nonbiological physical evidence in its possession, let

alone to examine physical items that are not in its possession to determine whether biological material is or is not present. See 316 Kan. at 452. But that is exactly what Harris now claims.

Here, the objects on which Harris alleges there is biological material are no longer in the custody of the State, leaving Harris with no remedy under K.S.A. 21-2512. The State already tested the objects and secured the biological material it obtained. There is thus no relief available to Harris under our postconviction DNA-testing regime. The statute does not contemplate, and certainly does not provide, a spoliation remedy for nonbiological evidence.

Accordingly, on these facts Harris has no claim under K.S.A. 21-2512. If he did, we would be creating an obligation on the State—arising not out of the Constitution, but out of K.S.A. 21-2512—to keep *all* physical evidence it ever gathers in any case on the off chance it might hold untested biological material. This directly contradicts the plain language of the statute and our holding in *Angelo*.

Because K.S.A. 21-2512 does not provide a vehicle for a claim on the facts presented here, Harris' constitutional due process spoliation allegations must stand on their own if they are to be properly considered on their merits. Viewed through this lens, Harris' suit can, at best, be construed as a claim for postconviction relief under K.S.A. 60-1507. But the murder and initial conviction in this case occurred nearly 30 years ago and this court affirmed his conviction in 1996. *Harris*, 259 Kan. at 691. Harris waited 23 years to bring his spoliation due process claim. As such, even construed in the light most favorable to Harris as a motion under K.S.A. 60-1507, the claim is procedurally barred by the one-year time limitation of K.S.A. 2023 Supp. 60-1507(f)—and Harris has presented no argument for an exception.

Thus, to the extent Harris asserts a claim under our postconviction DNA-testing statute, he has not stated a proper claim for relief. To the extent we were to consider Harris' true constitutional claim, it is procedurally barred. The district court's denial of Harris' motion was thus correct, though for the wrong reason. See *State v. McCroy*, 313 Kan. 531, 539, 486 P.3d 618 (2021) (affirming lower court as right for the wrong reason).

Affirmed.

\* \* \*

ROSEN, J., concurring:  I agree with the majority's ultimate conclusion that Harris is not entitled to the relief he seeks. I am troubled, however, by certain analytic determinations that the majority makes along the way to reach its conclusion. I voice my concerns not because the facts of this case suggest either bad faith on the State's part or a likelihood of finding exonerating evidence on Harris' part. I see no evidence of bad faith, and I see essentially no indication that Harris would obtain any relief even if the weight had been located. But I am concerned about absolute statements in the majority's opinion that may preclude remedies in future cases if the State does act in bad faith, either intentionally or through gross negligence. And I can foresee situations in which convicted individuals might be exonerated if physical objects were available for testing under K.S.A. 21-2512.

The majority misconstrues what Harris is seeking. He does not seek testing of nonbiological materials; he seeks testing of biological materials retrieved from a nonbiological item. DNA rarely exists in a pure state detached from nonbiological things. It exists on swabs, on bed linen, on plastic cups, and on countless other objects. Potentially, it also exists on weights that are used as murder weapons. To hold that K.S.A. 21-2512 does not apply to testing such items for DNA evidence renders the statute nearly meaningless.

7

The majority misleadingly avers that the "State already tested the objects and secured the biological material it obtained." Slip op. at 6. Yes, the State tested blood residue on the weight to determine whether it was the blood of a victim or of a perpetrator. But the State did not swab other parts of the weight to determine whether Harris' DNA was on the weight, which is the testing that Harris requests. Harris contended the plate could plausibly contain traces of DNA from the contact with all the various people who handled it. There is no indication that the State carried out this kind of comprehensive testing, and the State does not assert that this testing took place.

From this point on, State actors will not only have little incentive to retain evidence used to obtain convictions; they will have great incentive to dispose of such evidence. I posit a hypothetical scenario: a victim testifies that her assailant used her hairbrush to comb his beard. After an individual is tried and convicted, the accused requests DNA testing of hairs from the brush. Concerned that such testing might exonerate the accused, law enforcement tosses the brush into a lake. Under the majority opinion, this is not a problem. After all, it is a nonbiological item that the State disposed of, which is not subject to the terms of K.S.A. 21-2512. Furthermore, even a deliberate sabotage of the statute's purpose has no remedy. While the majority vaguely hints at some kind of due process claim, it envisions no realistic way of bringing such a claim.

As a consequence, I am concerned that the majority's construction of rights under K.S.A. 21-2512 encourages loss of exculpatory evidence and potentially denies innocent people the relief the statute seeks to promote. The district court examined the circumstances under well-established due process analysis, and the State agreed with that analysis. I think the district court and the State were right. Under that analysis, Harris did not prevail, and I therefore agree with the majority in denying him the relief he seeks on appeal.

8