No. 72,761

STATE OF KANSAS, *Appellee*, v. ALAN KEITH COPRIDGE,
*Appellant*.
(918 P.2d 1247)

Opinion filed May 31, 1996.

*Stephen Douglas Bonney*, special appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with him on the brief for appellant.

*Charles R. Reimer*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This is a direct criminal appeal from convictions of felony murder, first-degree murder, aggravated robbery, and aggravated kidnapping. The defendant, Alan Keith Copridge, claims that the trial court erred (1) in failing to grant his motion to suppress evidence, (2) in failing to grant his motion to suppress his pretrial statements, and (3) in failing to grant a mistrial. The defendant also appeals from the imposition of a hard 40 sentence, claiming that the State failed to comply with the statutory notice requirements.

On Monday, October 15, 1993, Damen Fuller, an employee of Victor's Auto Sound, found the owner and his employer, Harold Victor Williams, dead at Williams' duplex. The next day, John Stevens, a friend of the defendant, reported to the Wichita Police Department that the defendant had called him several times over

the weekend, asking him to join him in a plan to steal stereo equipment. Stevens stated that the defendant told him he wanted to steal the equipment from the victim's truck and that the victim owned a stereo shop. Stevens also told the police that the defendant mentioned that the victim was someone he knew. When Stevens asked the defendant how he was going to rob someone he knew, who could be expected to identify him, the defendant stated that he had not figured out that part of the plan yet.

Earlier that same morning, the defendant had been arrested on an unrelated charge. After receiving Stevens' information, Detective Chisolm of the Wichita Police Department went to the jail and examined the defendant's personal effects which had been moved to the property room. Inside the defendant's wallet, Chisolm found a business card from Victor's Auto Sound. The defendant was still in the booking area while the search was being conducted. After the defendant was issued an orange jumpsuit, Chisolm examined the clothing the defendant had been wearing. He noticed what appeared to be bloodstains on the defendant's shoes.

On October 27, Chisolm obtained and executed a search warrant to collect blood and hair samples from the defendant. Chisolm testified that he knew he could not interview the defendant at the time because the defendant was represented by an attorney. As a result, he simply explained to the defendant that he needed blood and tissue samples in connection with a murder investigation. The defendant asked who the murder victim was and Chisolm gave him the name of the victim.

According to Chisolm, the defendant then told him he wanted to talk about the murder. Chisolm informed the defendant that he could not talk about the murder because the defendant was represented by counsel. The defendant insisted that he had only requested an attorney to represent him on the prior unrelated charge, not the murder charge, and that he wanted to talk. Finally, Chisolm and Officer Kenneth Landwehr took the defendant into an examination room and advised him of his *Miranda* rights. Chisolm stated that the defendant did not appear intoxicated or under the influence of medication.

The defendant told Chisolm and Landwehr that he was a friend of the deceased, Williams, and that he and Williams were homosexual lovers. The defendant said that on the night of the murder, he and his friend Stacy Speed were at Williams' house watching television. When he came out of the bathroom he saw Speed stabbing Williams with a knife. The defendant tried to take the knife away from Speed and finally got Speed to stop stabbing Williams.

According to the defendant, Speed began to gather stereo equipment from the residence. Speed told the defendant to help him load the stereo equipment into the Pontiac that they had driven to the residence and also told the defendant to follow him in Williams' BMW. After leaving Williams' house, he and Speed went to Victor's Auto Sound, but Speed was unable to get into the shop. They then went to Speed's girlfriend's house.

After more questioning by the officers, the defendant admitted that he and Speed had planned to go to Williams' house with the intention of robbing him, but stated that he then told Speed he did not want to rob Williams. The defendant also told the officers that when he tried to stop Speed from stabbing Williams, his gun fell out of the waistband of his pants, and that Speed grabbed the gun and forced him to tape Williams' hands and feet together and to steal the stereo equipment.

The defendant was charged with felony murder, or in the alternative, first-degree murder, aggravated robbery, aggravated kidnapping, and criminal possession of a firearm, which was the unrelated charge on which the defendant had originally been arrested. The defendant pled guilty to criminal possession of a firearm and went to trial on the other charges.

Prior to trial, the defendant filed motions to suppress both the evidence obtained from a search of his personal items and his statements to the officers. Both motions were denied by the trial court. Also prior to trial, the defendant made a motion in limine to prohibit witnesses from talking about the defendant's previous incarceration. The trial court granted the motion and noted that the witnesses were not to talk about the defendant being in the penitentiary for prior wrongs, or the circumstances surrounding the defendant's stop on the unrelated charge, although the officer mak-

ing the stop could testify as to why the defendant had been stopped.

In its opening statement, the State mentioned that at the time the search of the defendant's personal effects was made he was "in jail on an unrelated arrest." The defendant objected and moved for a mistrial on the grounds that the State had violated the motion in limine. The trial court denied the motion.

The defendant was convicted on all counts. He was sentenced to the hard 40 on his first-degree murder conviction, which was made consecutive to concurrent terms totalling 178 months.

### (1) Suppression of Physical Evidence

The defendant argues that the district court erred in failing to suppress the evidence collected from a search of his personal effects and clothes which was conducted while he was being booked into jail on an unrelated charge. He contends that the search was unconstitutional in that Chisolm did not have probable cause to search or a search warrant.

We have held that where a defendant is taken into custody and his or her personal effects are lawfully seized and retained for safekeeping, the defendant has no expectation of privacy and officers may thereafter take a "second look" at the inventoried personal effects without a search warrant and remove any evidence. *State v. William*, 248 Kan. 389, 426, 807 P.2d 1292, *cert. denied* 502 U.S. 837 (1991); *State v. Costello*, 231 Kan. 337, 342, 644 P.2d 447 (1982). The test in such a situation is not whether the items are in plain view or whether the police had probable cause to search but whether the items were lawfully in their custody in the first place. *State v. William*, 248 Kan. at 425-26.

*William* is based upon *United States v. Edwards*, 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234 (1974). See 248 Kan. at 422. In *Edwards*, the accused was booked into jail, and the following morning his clothing was taken from him and held as evidence. The United States Supreme Court stated that at the time the accused was booked into jail, "[w]ith or without probable cause, the authorities were entitled at that point not only to search Edwards' clothing but also to take it from him and keep it in official custody."

415 U.S. at 804. The Court also stated: "[I]t is difficult to perceive what is unreasonable about the police examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest." 415 U.S. at 806. *Edwards* concluded:

" 'While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.' " 415 U.S. at 808-09 (quoting *United States v. DeLeo*, 422 F.2d 487, 493 [1970]).

The defendant recognizes our prior decisions. However, he argues that the Supreme Court stated in *Edwards* that "[i]n upholding this search and seizure, we do not conclude that the Warrant Clause of the Fourth Amendment is never applicable to post-arrest seizures of the effects of the arrestee." 415 U.S. at 808. He contends that in seizing his clothing, the State must first obtain a warrant. In support of this contention, he cites *Brett v. United States*, 412 F.2d 401, 406 (5th Cir. 1969), and *People v. Hayes*, 154 Misc. 2d 429, 584 N.Y.S.2d 1001 (1992).

The defendant's reliance is misplaced, for neither of these cases support his argument. *Brett* is a pre-*Edwards* case and would have been decided differently under *Edwards. Hayes* stands only for the proposition that police must have a search warrant to search an accused's clothing *if the clothing is not in the accused's possession when he is arrested.* In *Hayes*, the accused was in a hospital at the time of the arrest and police seized his clothing from the hospital storage room. The court found that Hayes retained a privacy interest in some aspects of his clothing precisely because it was not in his possession at the time of the arrest and, thus, the situation differed from the usual situation in which the police could conduct a warrantless search. See 154 Misc. 2d at 433-34.

As we stated in *William*, the test for whether police can search articles of clothing and personal effects taken from an accused at the time of arrest is not whether there is probable cause to search but simply whether the items were lawfully seized in the first place. 248 Kan. at 426. In the case before us, there is no dispute that the defendant's effects were lawfully seized. Therefore, the police were

allowed to search the effects without a warrant or probable cause, and the district court did not err in denying the defendant's motion to suppress.

### (2) Suppression of the Defendant's Pretrial Statements

The defendant contends that the district court erred in failing to suppress his confession to the police regarding his role in the crime. He argues that the police should have refrained from interrogating him because he was represented by an attorney.

The United States Supreme Court has held that the accused, once having expressed his or her desire to be represented by counsel, is not subject to further interrogation until counsel has been made available, *unless the accused initiates further communications. Edwards v. Arizona,* 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). This prohibition extends even to interrogations about a separate crime. *Arizona v. Roberson,* 486 U.S. 675, 687, 100 L. Ed. 2d 704, 108 S. Ct. 2093 (1988); see *State v. Morris,* 255 Kan. 964, 977-78, 880 P.2d 1244 (1994).

As noted in *Edwards,* further communications that are initiated by the suspect are valid. See *Edwards v. Arizona,* 451 U.S. at 484-85. Moreover, police are free to inform the suspect of the facts of the second investigation as long as the communication does not constitute interrogation. *Arizona v. Roberson,* 486 U.S. at 687.

The defendant in this case was represented by an attorney on the unrelated charge. The officers knew this and did not question the defendant. The officers obtained a valid search warrant, and while executing the warrant to obtain the defendant's hair and blood samples, informed him that they needed the samples as part of a separate murder investigation. After being informed that Williams was the victim, the defendant stated that he wanted to talk to the officers about the murder investigation. The officers declined, stating that they could not talk to him because he was represented by an attorney. The defendant insisted that he talk with the officers about the murder investigation.

The defendant argues that the officers should actually be charged with having initiated the conversation because their attempt to gather evidence under the search warrant was merely a

pretext to have contact with the defendant and to encourage him to talk about the murder. He contends that the search warrant was merely a pretext because no laboratory comparisons were done with the evidence collected in the search and the search warrant was without probable cause.

The record establishes that the affidavit for search warrant for the defendant's hair and blood samples was supported by probable cause. The standard is whether a reasonably prudent person would believe that the evidence would be obtained by the search at a specific location. See *State v. Longbine*, 257 Kan. 713, 716, 896 P.2d 367 (1994). The affidavit presented by the officers in their attempt to obtain a search warrant recited the information given to them by Stevens, the informant, relating to the defendant's plans to rob a stereo store owner. The defendant argues that these were merely statements from a previously unknown confidential inform- ant. However, this argument ignores the corroborating evidence also found in the affidavit regarding the presence of blood stains on the defendant's shoes and the presence of the victim's business card in the defendant's wallet. Based on this information, a de- tached magistrate could certainly have found probable cause for the issuance of a search warrant to collect blood and hair samples from the defendant.

### (3) Mistrial

The defendant claims that the trial court erred in failing to de- clare a mistrial after the prosecution in its opening statement made reference to the defendant being in jail on a previous charge when his clothing was searched. The defendant argues that this reference was a clear violation of the motion in limine prohibiting the intro- duction of the defendant's prior criminal record.

K.S.A. 22-3423(1)(c) authorizes the district court to declare a mistrial when prejudicial conduct makes it impossible to proceed with the trial without injustice to either the defendant or the pros- ecution. The declaration of a mistrial is within the discretion of the district court, and the court's decision will not be disturbed absent abuse of that discretion. *State v. Rinck*, 256 Kan. 848, 853, 888 P.2d 845 (1995).

Alleged violations of an order in limine are evaluated through the use of a two-part test. *State v. Warden*, 257 Kan. 94, 125, 891 P.2d 1074 (1994). First, there must be a determination of whether there was a violation of the order in limine. 257 Kan. at 125. Second, if the order was violated, there must be a determination of whether the testimony elicited in violation of the order substantially prejudiced the defendant. 257 Kan. at 125. The burden is on the defendant to show that he or she was substantially prejudiced. *State v. Massey*, 242 Kan. 252, 264, 747 P.2d 802 (1987).

Here, the order in limine was that officers were not to mention that the defendant had been previously incarcerated for prior wrongdoing, and further, that nothing was to be said about the circumstances surrounding the defendant's illegal possession of a gun which led to his arrest in this case. However, the court said that Officer Tuzicka could testify to the circumstances surrounding the stop and identify the gun that was obtained by the defendant.

The objection leading to the motion for mistrial arose when the State, in its opening argument, stated that at the time the search of the defendant's personal effects was made, "Mr. Copridge [was] in jail on an unrelated arrest." The defendant immediately made a motion for mistrial which the district court denied. At the close of the State's evidence, the defendant once again made a motion for mistrial. Once again, the district court denied the motion, stating that in light of the evidence the statement did not violate the order and its introduction did not prejudice the defendant. We agree with the trial court in its conclusions.

The first question that must be answered is whether the statement that the defendant was in jail on an unrelated offense violated the motion in limine. See *State v. Warden*, 257 Kan. at 125. The defendant argues that it was a violation of the motion in limine because it was irrelevant and prejudicial and allowed the jury to infer that the defendant had a propensity to commit bad acts.

In order to answer this question, the purpose of a motion in limine becomes important. We have held that a motion in limine should be granted only when the trial court finds two factors are present: (1) The material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer

of evidence or statements made during trial concerning the material will tend to prejudice the jury. *State v. Massey*, 242 Kan. at 265.

In this case, evidence surrounding the defendant's prior incarceration was certainly irrelevant and inadmissible. Further, evidence and details surrounding his prior arrest for possession of a gun were also inadmissible, at least until the State put on evidence tending to show that the gun was somehow related to the crime. However, the evidence concerning the defendant being in jail was relevant. The fact that the defendant was in jail explains his location when his clothing was searched by the police and when the police talked to him about the crime. As a result, this information is of the type that is generally not affected by a motion in limine. No mention of the reason for the defendant's arrest was made by the State, and there was no mention of any prior offenses by the defendant. Under these circumstances, the motion in limine was not violated.

Further, assuming arguendo that the motion was violated, the defendant suffered no prejudice. Defense counsel mentioned the fact that the interview took place in the jail as part of his cross-examination of Chisolm. The State made no mention of the facts surrounding the arrest or any of the defendant's prior crimes. Under these circumstances, it is difficult to conceive how the statement made by the State during its opening argument caused prejudice to the defendant.

### (4) Notice Requirements Under the Hard 40 Sentence

The defendant contends the record does not show the State complied with the notice requirements of K.S.A. 1993 Supp. 21-4624(1) and, therefore, the district court erred in imposing the hard 40 sentence. More specifically, the defendant argues that the notice was defective for two reasons: (1) The State's hard 40 notice was not filed until December 2, 1993, 1 day after arraignment and (2) the transcript of arraignment does not indicate that the State tendered the original and a copy of the notice to the court with the intent that they be filed pursuant to K.S.A. 60-205(e).

In order for the State to seek imposition of the hard 40 sentence, the prosecution must file written notice of such intent with the court and serve a copy on the defendant "at the time of arraignment." K.S.A. 1993 Supp. 21-4624(1). This notice requirement "is mandatory and where the State fails to follow the requirement, the hard 40 sentence cannot be imposed." *State v. Peckham*, 255 Kan. 310, 315, 875 P.2d 257 (1994). The hard 40 notice may not be filed with the court after arraignment. See *Peckham*, 255 Kan. at 317.

In *Peckham*, 255 Kan. 310, the hard 40 notice carried a date stamp of 1 day after arraignment. At or shortly before arraignment, the State served a copy of the notice on the defendant and placed a copy on the judge's bench. The record of arraignment was silent as to those events, but the transcript of a subsequent hearing contained the judge's recollection of the copy having been placed on his bench at arraignment. However, the record contained no indication as to whether the copy was placed on the bench for the purpose of filing or as a courtesy to the court.

To resolve this issue, the Supreme Court defined the criteria for filing a document by personal delivery to the judge at arraignment. K.S.A. 60-205(e) provides that a judge may permit pleadings to be filed with him or her, "in which event the judge shall note thereon the filing date and forthwith transmit them to the office of the clerk." This civil statute applies, as there is no provision in criminal procedures to the contrary. *Peckham*, 255 Kan. at 316. If papers are filed with the judge, "filing is complete when the judge personally accepts custody of the papers." *Peckham*, 255 Kan. at 316-17 (citing *Tobin Constr. Co. v. Kemp*, 239 Kan. 430, Syl. ¶ 1, 721 P.2d 278 [1986]).

The court found the filing requirement of K.S.A. 1993 Supp. 21-4624(1) had not been met. The court noted several factors in reaching its conclusion: (1) The record contained no showing that the judge had permitted the notice to be filed with him or that he personally accepted custody of the notice, (2) the transcript of arraignment did not indicate the State had given a copy to the court, (3) according to the judge, a copy, not the original, had been placed on the bench, (4) the State did not indicate on the record that the copy was being placed on the bench for the purpose of satisfying

the requirement of K.S.A. 1993 Supp. 21-4624, rather than as a courtesy to the judge, and (5) the trial judge made no finding or comment on the record to indicate he intended or contemplated that the copy of the notice had been placed on his bench for filing pursuant to K.S.A. 60-205(e).

Unlike *Peckham*, the record in this case reveals that during arraignment the prosecutor handed the district judge the original and 1 copy of the notice of intent to seek the hard 40 sentence on the defendant, handed defense counsel and the defendant a copy of the notice, and stated, "[T]hat has to be done, I think, pursuant to statute at arraignment. So, I think we've at least satisfied that statutory ―." At this point the court interrupted, saying, "I note that the actual notice that you just handed me . . . does not have the date of the arraignment filled in. Did you want to do that now?" The prosecution responded that he had been unsure whether formal arraignment would take place that day, to which the court replied, "I think we're just doing it right now." The State responded, "That'd be great."

The notice of intent to seek imposition of the hard 40 sentence bears a file stamp date of the following day, December 2, 1993, with no other indication of a different filing date.

This case is similar to our recent decisions in *State v. Harris*, 259 Kan. 689, 915 P.2d 758 (1996), and *State v. Williams*, 259 Kan. 432, 913 P.2d 587 (1996). In *Williams*, the hard 40 notice carried a date stamp of 4 days after arraignment. The record showed that, at arraignment, the State handed the court the original notice, stating, "The State files with the Court the original document," to which the court replied, "Thank you, Ms. Foulston. It will be filed in the court clerk's office." 259 Kan. at 443. The judge did not write the date and time he received it on the notice as required by K.S.A. 60-205(e). The journal entry of arraignment stated that the court accepted custody of the hard 40 notice. The *Williams* court found the district court had accepted custody of the original notice for purposes of the filing requirement of K.S.A. 1993 Supp. 21-4624 and that filing was complete upon such acceptance. *Williams*, 259 Kan. at 444. "Failure to forward the notice forthwith or to

enter a necessary date does not prejudice the State." *Williams*, 259 Kan. at 444 (citing *Peckham*, 255 Kan. at 316-17).

In *State v. Harris*, the transcript of arraignment contained the following statement by the State: "For the record, Your Honor, I would file with the Court notice of the State's intent to proceed under K.S.A. 21-4622 [*sic*]. A copy has been provided to counsel and also to the defendant." *Harris*, 259 Kan. at 708. When the matter was raised at the sentencing hearing, the judge remembered that the State had given copies of the notice to the defendant and also handed the notice to the judge to be filed and that these actions were "all simultaneous." *Harris*, 259 Kan. at 707. On appeal, this court found the record in *Harris* clearly showed the State intended to file the hard 40 notice with the trial court and actually did so. *Harris*, 259 Kan. at 710.

However, the trial judge in *Harris* apparently did not write the date and time of receipt on the notice and did not transmit the notice to the clerk until later that afternoon. The defense argued these omissions violated the statutory requirements for judges to accept filing pursuant to K.S.A. 60-205(e) and, therefore, invalidated the hard 40 sentence. We rejected this argument, holding that the State's filing of the notice with the judge was all that was required to satisfy K.S.A. 1992 Supp. 21-4624, and the judge's subsequent failure to date the papers or file them until later that afternoon did not prevent the State from seeking the hard 40 sentence. *Harris*, 259 Kan. at 710.

Consistent with *Williams* and *Harris*, the State in this case delivered the original of the notice to the judge. The record in this case discloses that the State handed an original and copy to the trial judge. The judge acknowledged receipt of "the actual notice," and the record contains a hard 40 notice bearing an original signature with the proper arraignment date.

Although the record in this case does not contain an express statement from the judge that he was accepting custody of the notice, the record demonstrates that the trial judge acknowledged receipt of the "actual notice" and inquired of the State regarding the omitted date of arraignment so that the date could be filled in at that time. The original of the notice appears in the record with

the arraignment date, December 1, 1993, filled in. The judge's reference to the "actual notice" and his clarification of the date of arraignment on the notice support the conclusion that the trial judge in this case intended to accept custody of the notice for filing. We conclude that the filing of the notice did occur at arraignment by personal delivery to the trial court.

Affirmed.