(980 P.2d 597)
No. 81,726

STATE OF KANSAS, *Appellant*, v. CHARLES BENNETT, *Appellee*.

Opinion filed May 14, 1999.

*Constance M. Alvey*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for appellant.

*William P. Mahoney*, of Kansas City, for appellee.

Before RULON, P.J., WAHL, S.J., and TIMOTHY E. BRAZIL, District Judge, assigned.

WAHL, J.: Charles Bennett was charged with mistreatment of a dependent adult in violation of K.S.A. 21-3437(a)(1) for allegedly mistreating his mother, Ruby Willmon. Prior to trial, Bennett filed a motion in limine asking the district court to prohibit the State from introducing evidence of physical injuries sustained by Willmon. The district court granted the motion and the State timely filed this interlocutory appeal.

Ruby Willmon suffered from Alzheimer's disease and diabetes. Because of her condition, she had difficulty controlling her balance and would occasionally fall down. Willmon lived with her son, Charles Bennett, his wife, Sue Bennett, and his stepdaughter, Peggy Sue Rosa. In November 1997, Sue Bennett called the police after allegedly hearing Bennett slap Willmon, and Bennett was subsequently charged. The State's Information charged in relevant

part: "Charles Bennett did unlawfully, knowingly and intentionally inflict physical injury upon a dependent adult, to-wit: Ruby Willmon, in violation of K.S.A. 21-3437."

A preliminary hearing was held in February 1998 before Judge Ernest Johnson. Janet Chase, Willmon's home health-care nurse, Sue Bennett, and Peggy Sue Rosa testified at the hearing. The State introduced several pictures of Willmon into evidence, depicting a cut or scratch on Willmon's nose and one above her eye. Testimony indicated that it was unknown what caused the marks, but they were on her face before the November incident. No other evidence relating to the cause of the injuries was offered.

Rosa testified she had witnessed Bennett slap Willmon in the past and described an incident when she observed Bennett "smacking [Willmon] back and forth" for having wet her bed. Rosa stated Willmon had a black eye the day after the incident. She testified Bennett would grab Willmon by the back of the neck and wrist and push her into her bedroom whenever she attempted to enter the living room. She also stated Bennett would get upset and yell at his mother when she lost control of her bowels. Rosa testified Bennett and Sue locked Willmon in her room on at least one occasion.

Judge Johnson concluded the State failed to meet its burden of proof regarding the physical injury element of the crime charged. He noted, however, that he was required to bind a defendant over for trial on any crime that was shown at a preliminary hearing. He concluded there was probable cause to bind Bennett over on the theory he inflicted cruel punishment on his mother. The State accordingly amended the Information to read: "Charles Bennett did unlawfully, knowingly and intentionally inflict cruel punishment upon a dependent adult, to-wit: Ruby Willmon, in violation of K.S.A. 21-3437."

Bennett filed a motion in limine, asking the district court to prohibit the State from introducing physical injury evidence at trial. Judge Dexter Burdette heard arguments from both parties at the start of trial and granted Bennett's motion. In doing so, Judge Burdette stated the infliction of physical injury and the use of cruel punishment were separate and distinct acts. He stated the district

court's ruling at the preliminary hearing limited the State's claim to mistreatment by cruel punishment and the probative value of physical injury evidence was outweighed by its prejudicial effect on the jury. The State's subsequent motion for a continuance pending this interlocutory appeal was granted.

K.S.A. 21-3437 governs the offense of mistreatment of a dependent adult and provides in relevant part: "(a) Mistreatment of a dependent adult is knowingly and intentionally committing one or more of the following acts: (1) Infliction of physical injury, unreasonable confinement or cruel punishment upon a dependent adult."

The State argues the district court erred in finding the definition of cruel punishment was distinct from physical injury. It claims the common meaning of cruel punishment includes actions that cause pain, suffering, rough handling, or mistreatment. The State asserts it wanted to introduce evidence of slapping, smacking, and rough handling, and the district court's ruling precluded it from doing so. It claims Judge Burdette ruled such evidence rose to the level of physical injury and, thus, was excluded.

In making his ruling, Judge Burdette concluded the State was prohibited from introducing evidence of physical injury but was permitted to introduce evidence relating to cruel punishment. It is unclear whether Judge Burdette's decision prohibited evidence of slapping and other physical contact. Judge Burdette did not expressly state what evidence constituted physical injury or cruel punishment and the record does not contain a written order.

The Kansas Supreme Court has commented on the importance of the trial judge's specifically stating what evidence is to be excluded pursuant to a motion in limine:

"It is important that a proper written motion be filed to pinpoint the material or evidence to be protected against. This is necessary together with an order of the court setting forth the specific basis for exclusion or admission. A mistrial or reversible error on appeal may be avoided by having a proper motion and order drawn and filed. [Citation omitted.] We repeat, it is important for the motion to state the specific matter that the movant believes to be inadmissible and prejudicial. The motion should not be general in scope." *State v. Quick*, 226 Kan. 308, 312, 597 P.2d 1108 (1979), *disapproved on other grounds State v. Jackson*, 244 Kan. 621, 624, 772 P.2d 747 (1989).

Neither the motion nor the district court's order properly pinpointed what evidence was to be excluded.

In his motion, Bennett alleged the State sought to introduce testimony and evidence "of the physical injury in spite of the results of the preliminary hearing" and that the probative value of the evidence was outweighed by its prejudicial effect. Bennett orally argued the State should be precluded from presenting the photographs or testimony of other physical injuries at trial. He also argued the State should not be able to offer "testimony about [Bennett's] care of his mother and nothing about slapping, nothing about bruises, nothing about him having physical contact with his mother because that was found not to have been sufficient even at the preliminary hearing level."

On appeal, Bennett states:

"The Court's ruling does not preclude the Appellant from presenting evidence pertaining to how the Defendant took care of his dependent mother, victim. The only real effect of the ruling is that the highly prejudicial evidence which failed to meet the test of probable cause will not be allowed to be given to the jury."

This statement is contrary to the argument made by Bennett to the district court and does not explain whether Bennett construed the preliminary hearing ruling to exclude evidence of slapping or rough handling.

In explaining his ruling, Judge Burdette stated:

"No evidence of the infliction of physical injury should be allowed in this trial of the defendant. . . .

. . . .

"Only any evidence of cruel punishment will be allowed. There will be no evidence of any physical injury—infliction of physical injury upon the dependent adult in question will be allowed. That's the defendant's motion in limine and I am granting it in all respects. I believe the prior ruling by the preliminary hearing Judge has confined the evidence to this scope and I am limiting the State to the scope that the prior Judge has already ruled."

This statement suggests that the State was precluded from introducing evidence of slapping or physical contact, which is inconsistent with Judge Johnson's ruling.

In explaining his ruling at the preliminary hearing, Judge Johnson stated:

"I frankly think that the legislature intended to prohibit, regarding adults who are dependent, essentially the same thing that the legislature intended to prevent regarding children . . . . I'm not saying a jury is going [to] find that the slapping incidents and the squeezing of the neck incidents and those things are cruel punishment, but I am saying that, in my opinion, the State has met its burden to show probable cause to that those crimes—that crime was committed. . . .

. . . .

". . . So I'm not going to declare this statute unconstitutional, but I am going to say that physical injury carries with it certain common sense meanings. The State has attempted to show that the mark on the nose and the—the bruising around the eye satisfies that, and I'm not satisfied that the connection has been direct enough to bind the defendant over regarding that injury."

It is clear that Judge Johnson concluded evidence of slapping and other physical contact could potentially support the charge of mistreatment of a dependent adult based on a theory of cruel punishment. Judge Burdette's statement he was granting Bennett's motion in all respects is inconsistent with his statement the evidence was limited in scope to Judge Johnson's ruling.

Judge Burdette's ruling is ambiguous, and Bennett's motion and oral argument were inconsistent. The case must be remanded for clarification of what evidence was specifically excluded. See Supreme Court Rule 165 (1998 Kan. Ct. R. Annot. 187); see also *Burch v. Dodge*, 4 Kan. App. 2d 503, Syl. ¶ 1, 608 P.2d 1032 (1980) (remanded case where trial court's findings of fact and conclusions of law were inadequate and precluded meaningful appellate review).

Judge Burdette's attempt to distinguish the child abuse statute and his grant of Bennett's motion in limine in its entirety suggests evidence of slapping and physical contact was excluded under his ruling.

"We apply the abuse of discretion standard of review to the motion in limine issue. The admission of exclusion of evidence is within the sound discretion of the trial court." *State v. Rowell*, 256 Kan. 200, 208, 883 P.2d 1184 (1994). When the facts material to a decision of the court on a motion to suppress evidence are not in dispute, the question of whether to suppress becomes a question of law. An appellate court's scope of review on questions of law is unlimited. *State v. Anderson*, 259 Kan. 16, 18, 910 P.2d 180 (1996).

Judge Burdette stated he excluded the evidence because he was bound by Judge Johnson's ruling, but he misconstrued Judge Johnson's ruling. Further, Judge Johnson did not rule on the admissibility of evidence at trial. He properly bound Bennett over for trial based on a showing that Bennett had committed a crime. See *State v. Pioletti*, 246 Kan. 49, 60-61, 785 P.2d 963 (1990) (noting defendant may be charged with one offense and bound over for another if it appears on preliminary examination he is guilty of a public offense).

Although the State amended the Information in accordance with the preliminary hearing ruling, it could properly amend the Information to include the physical injury theory at any time before a verdict or finding by the district court as long as it did not allege an additional or different crime. See *State v. Matson*, 260 Kan. 366, 370, 921 P.2d 790 (1996).

"[A] motion in limine should be granted only when the trial court finds two factors are present: (1) The material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer of evidence or statements made during trial concerning the material will tend to prejudice the jury. [Citation omitted.]" *State v. Copridge*, 260 Kan. 19, 27-28, 918 P.2d 1247 (1996).

An appellate court is not bound by the district court's interpretation of a statute; rather, interpretation of a statute is a question of law and this court's review is unlimited. See *Cure v. Board of Hodgeman County Comm'rs*, 263 Kan. 779, 782, 952 P.2d 920 (1998). When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed rather than determine what the law should be. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998). "[I]n construing statutes, statutory words are presumed to have been and should be treated as consciously chosen, with an understanding of their ordinary and common meaning and with the legislature having meant what it said." *International Ass'n of Firefighters v. City of Kansas City*, 264 Kan. 17, 31, 954 P.2d 1079 (1998).

Cruel punishment and physical injury are not defined in K.S.A. 21-3437 or in the criminal code. However, that the legislature used the term "cruel and inhuman corporal punishment" in K.S.A. 21-3609 does not indicate the legislature intended to exclude slapping

and other physical contact from the definition of cruel punishment under K.S.A. 21-3437 as suggested by Bennett.

In *Paida v. Leach*, 260 Kan. 292, 917 P.2d 1342 (1996), the Supreme Court defined the term "bodily injury" as used in the Protection from Abuse Act, K.S.A. 60-3101 *et seq*. It stated the terms "bodily harm" and "bodily injury" were synonymous. The court noted that in *State v. Taylor*, 217 Kan. 706, 538 P.2d 1375 (1975), bodily harm was defined as any touching of the victim against the victim's will, with physical force, in an intentional, hostile, and aggravated manner, or the projecting of such force against the victim. 260 Kan. at 299. The *Paida* court also stated: "We conclude that bodily injury under the Act requires a finding of substantial physical pain or an impairment of physical condition." 260 Kan. at 301.

K.S.A. 21-3437(a)(1) is plain and straightforward in its terminology proscribing the commission of "one or more of the following acts: (1) Infliction of physical injury, unreasonable confinement or cruel punishment upon a dependent adult." It is not a prohibition against three separate and distinct offenses. Physical injury could result from cruel punishment. Unreasonable confinement could also be cruel punishment. "Physical injury" as used in K.S.A. 21-3437 is compatible with "bodily injury" as defined in *Paida*. Evidence that Bennett slapped his mother could potentially support a charge of intentional infliction of physical injury upon a dependent adult.

At the same time, such evidence could support a charge under a cruel punishment theory. Cruel punishment as defined in Black's Law Dictionary and the case law tends to fall in the context of the Eighth Amendment prohibition against cruel and unusual punishment. Cruel and unusual punishment is "such punishment as would amount to torture or barbarity, and any cruel and degrading punishment not known to the common law." Black's Law Dictionary 1234 (6th ed. 1990). Webster's New Collegiate Dictionary 271, 928 (1981) defines cruel as "disposed to inflict pain or suffering . . . causing or conducive to injury, grief, or pain" and punishment as "severe, rough, or disastrous treatment." Con-

sideration must also be given to the age and physical and mental condition of the victim.

Evidence of slapping and other physical contact with a dependent adult for the purpose of disciplining or chastising would fall under a common meaning of cruel punishment. Rosa's testimony indicating Bennett slapped, pushed, and grabbed his mother was highly probative because it tended to show Bennett intentionally inflicted cruel punishment.

The district court erred in concluding evidence of slapping or other physical contact was excluded from the meaning of cruel punishment under K.S.A. 21-3437(a)(1) and in not examining its probative value. Evidence of slapping, smacking, and rough handling should have been admitted in proof of the State's Information.

Reversed and remanded for clarification of evidence excluded and further proceedings as necessary.