NOT DESIGNATED FOR PUBLICATION

No. 113,576

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant,*

v.

TRAE D. REED,
*Appellee.*

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed December 18, 2015.
Affirmed.

*Daniel D.* Gilligan, assistant district attorney, Keith *E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon Crane*, of Hutchinson, for appellee.

Before MALONE, C.J., HILL and STANDRIDGE, JJ.

*Per Curiam*: The State appeals the district court's decision granting Trae Reed's motion to suppress evidence found in the search of his wallet at a car stop. Specifically, the State contends that the search of Reed's wallet was a proper search incident to arrest. In the alternative, the State argues that the evidence was admissible under the inevitable discovery doctrine. Finally, the State argues that even if the search of Reed's wallet was illegal, the evidence was admissible under the good-faith exception to the exclusionary rule. Finding no merit to the State's arguments, we affirm the district court's judgment.

1

On July 28, 2014, Officer Brian Carey of the Hutchinson Police Department stopped Reed for driving without a driver's side mirror on his vehicle. Officer Travis Lahaan also was present for the traffic stop. Carey spoke to Reed's passenger and other people at the scene; the passenger ultimately was released to leave. Meanwhile, Reed got out his wallet and produced identification at Lahaan's request. When Lahaan asked Reed to get out of his vehicle, Reed said that the driver's side door was not working, so he climbed out through the driver's side window, wallet in hand. After Reed got out of his car, he placed his wallet on the roof of the car. Lahaan and Reed stood at the rear of Reed's vehicle while Lahaan ran Reed's information through dispatch.

Upon learning that Reed had a suspended driver's license, Lahaan arrested Reed for driving while suspended. Lahaan put Reed into his patrol car and after he and Carey finished interviewing other people on the scene, Carey took Reed's wallet off the roof of Reed's car. Without Reed's consent, Carey searched the wallet and found a small plastic bag containing white residue Carey believed was methamphetamine. Reed was taken to the Reno County Detention Center where, during the booking process, another small clear plastic bag containing white residue was found in Reed's wallet.

On July 30, 2014, the State charged Reed with possession of methamphetamine, possession of drug paraphernalia with the intent to introduce a controlled substance into the human body, and driving on a suspended license. On March 19, 2015, Reed filed a motion to suppress the drug evidence, arguing that the search of his wallet was unreasonable and violated the Fourth Amendment to the United States Constitution.

The district court held a hearing on the motion on March 30, 2015. At the hearing, Lahaan and Carey testified for the State. In addition to relating the events of the traffic stop and arrest, Lahaan testified that it was Hutchinson Police Department policy to search a person and the "items that were on them at the time of arrest" as a search incident to arrest. He believed that the search of the wallet was a proper search incident to

2

arrest and stated that Carey took Reed's wallet from the top of his car so that Reed "could take it with him to the jail." Carey similarly testified that it was policy to search arrestees before placing them into patrol vehicles and to search arrestees' personal effects before they are taken into custody. Deputy Kyle Webb, who searched Reed upon his booking into the Reno County Detention Center, testified about the booking and searching policies, including a policy of searching an arrestee's personal effects, such as Reed's wallet. Reed did not present any evidence at the hearing.

After the evidence was presented, the State argued that the search of the wallet was a proper search incident to arrest. The State also asserted that because Reed had the wallet in his hand when he exited the vehicle, it was part of his personal effects and would have been searched at the jail; thus, the doctrine of inevitable discovery applied. The State also argued that even if the search was improper, there was no reason to apply the exclusionary rule because the officers acted in good faith.

Reed argued that under *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), there was no reasonable concern for officer safety that would have justified the search of the wallet and the search was further prohibited by the fact that the wallet was no longer accessible to Reed and could contain no evidence of the offense of the arrest. In response to the State's inevitable discovery argument, Reed argued that police could have given the wallet to one of the other people at the scene that Reed knew or could have left the wallet in Reed's car. After hearing arguments of counsel, the district court took the matter under advisement.

On April 2, 2015, the district court filed a written order, which stated, in relevant part, as follows:

"Defendant was handcuffed and at the rear of his vehicle when his wallet was first searched. The search of the wallet was not justified by safety reasons or as an effort

3

to safeguard evidence of the offense of driving while suspended. The officers were in possession of defendant's driver's license, the only evidence relevant to the crime for which defendant was being arrested. There was nothing protruding from the wallet suggesting any type of safety concern. Officer Carey testified it is police department policy to search a person's effects before placing them in a patrol car. The court assumes this policy is for safety reasons. Here though, defendant was separated from his wallet. Defendant apparently was not asked what he would like done with his wallet, if anything. If officers were concerned about security of defendant's property there was a passenger who arguably could have assumed custody of the wallet. There was no indication the passenger was a minor child or under the influence of drugs or otherwise incapacitated.

"The search was not authorized as incident to arrest. The inevitable discovery doctrine does not authorize the admission of the evidence because the wallet was not lawfully seized."

The district court granted Reed's motion to suppress the evidence. The State timely filed an interlocutory appeal.

On appeal, the State renews its argument that the district court should have found the search was legal as a search incident to arrest. In the alternative, the State argues that the evidence was admissible because it would have been inevitably discovered as part of an inventory search. Finally, the State argues that even if the search was improper, there was no reason to apply the exclusionary rule because the officers acted in good faith. Reed argues that the evidence was inadmissible under any theory and that the district court properly granted the motion to suppress.

When reviewing a district court's decision on a motion to suppress evidence, an appellate court determines whether the factual findings are supported by substantial competent evidence. The ultimate legal conclusions drawn from those factual findings are reviewed under a de novo standard. The appellate court does not reweigh the evidence or reassess the credibility of the witnesses. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). The State bears the burden of proof on a suppression motion. 299 Kan. at 296.

4

The Fourth Amendment to the United States Constitution, as applicable to the States under the Fourteenth Amendment, "protects everyone's right to be secure in his or her person and not subject to unreasonable searches by the government." *State v. James*, 301 Kan. 898, 908, 349 P.3d 457 (2015). Any warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement recognized in Kansas. *State v. Neighbors,* 299 Kan. 234, 239, 328 P.3d 1081 (2014). Those exceptions include:  consent; search incident to lawful arrest; stop and frisk; probable cause to search accompanied by exigent circumstances, of which hot pursuit is one example; emergency aid; inventory searches; plain view; and administrative searches of closely regulated businesses. 299 Kan. at 239.

*Search incident to arrest*

The State's primary argument is that the search of Reed's wallet was a proper search incident to arrest. As the State notes, Reed conceded that the traffic stop was lawful. Reed also did not challenge his arrest for driving while suspended. Because Reed had the wallet in his hand when he exited the vehicle, the State argues that the officers were authorized to search the wallet incident to Reed's arrest. Reed reasserts his argument that the search of his wallet at the scene of the car stop was illegal under *Gant*.

Citing *State v. Oram*, 46 Kan. App. 2d 899, 266 P.3d 1227 (2011), the district court held that "a search incident to arrest may only be conducted for the purposes of protecting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." The district court noted that Reed was handcuffed and at the rear of his vehicle during the search, there was nothing protruding from the wallet that would support a safety concern, and the officers already had possession of Reed's driver's license, which was the only evidence relevant to driving while suspended, which was the crime of arrest. Thus, the district court found that the search was not an authorized search incident to arrest.

In one paragraph of its brief, the State argues that *Oram* and *Gant* are distinguishable because those cases involved searches of a vehicle and Reed's case "does not involve the search of a vehicle or the contents of a vehicle." Yet the State does not explain why the vehicle distinction is important or how it renders *Oram* and *Gant* inapplicable. A point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Waller*, 299 Kan. 707, Syl. ¶ 5, 328 P.3d 1111 (2014). For this reason alone, we could reject the State's argument that the search of Reed's wallet was a proper search incident to arrest.

Moreover, the State's assertion that the search of Reed's wallet was a proper search incident to arrest fails on the merits. The United States Supreme Court has explained that the search incident to arrest exception

"derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. [Citations omitted.]

"In *Chimel*, we held that a search incident to arrest may only include 'the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.' [Citation omitted.] That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. [Citations omitted.] If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply. [Citation omitted.]" *Gant*, 556 U.S. at 338-39.

If Reed's wallet had been in his pocket or even in his hand when he was arrested, the search in this case clearly would have been constitutional as a search incident to arrest. But here, Reed placed his wallet on the roof of his car prior to his arrest. Before officers searched Reed's wallet, Lahaan arrested Reed, placed him in the back of the patrol car, and continued to complete the investigation and interview other people at the

scene, including Reed's passenger. By the time Carey searched Reed's wallet, there was no possibility that Reed could access the wallet. Therefore, under *Gant*, the justifications of the search incident to arrest exception were absent and the exception did not apply. The State's undeveloped argument that *Gant* is inapplicable because it concerned an automobile is unpersuasive in light of the language quoted above from *Gant*.

The State bore the burden in the district court and continues to bear the burden to show that the search of Reed's wallet was constitutional. *Reiss*, 299 Kan. at 296. It has failed to do so in the context of a search incident to arrest. Thus, we conclude the district court did not err in rejecting the State's claim that the warrantless search of Reed's wallet was authorized as a lawful search incident to arrest.

*Inevitable discovery doctrine*

The State argues that the district court should not have suppressed the evidence because it would have been inevitably discovered as part of an inventory search when Webb searched Reed's wallet at the detention center. Reed argues that the inevitable discovery doctrine does not apply because the wallet was not lawfully seized. "'The test under the inevitable discovery rule is that, if the prosecution establishes by a preponderance of the evidence that the unlawfully obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible.' [Citation omitted.]" *State v. Stowell*, 286 Kan. 163, 166, 182 P.3d 1214 (2008).

The search of Reed's wallet that occurred at the scene of the traffic stop was not an inventory search. The later search of Reed's wallet at the detention center when Reed was booked was an inventory search, but inventory searches are not valid if the police did not lawfully have custody of the item being searched. See *State v. Copridge*, 260 Kan. 19, 23, 918 P.2d 1247 (1996) (holding that inventory searches are not valid if the police did not lawfully have custody of the item being searched). Thus, for the booking search of the

7

wallet to be a valid inventory search, the police must have had lawful custody of the wallet in the first place. But for the reasons we previously have discussed, the police did not lawfully seize the wallet at the car stop as part of a search incident to arrest.

As the district court noted, the inevitable discovery doctrine applies only to evidence that "would inevitably be discovered through *lawful* means already initiated when the seizure was made." (Emphasis added.) *State v. Wilburn*, 50 Kan. App. 2d 663, 683, 332 P.3d 199 (2014), *rev. denied* 301 Kan. ___ (2015); see also *State v. Walker*, 283 Kan. 587, 603, 153 P.3d 1257 (2007). In a nutshell, because the State did not have lawful possession of the wallet at the scene of the car stop, any later inventory search of the wallet was not lawful. See *Copridge*, 260 Kan. at 23. Therefore, the discovery of the drugs at the jail through an unlawful inventory search does not render the evidence admissible under the inevitable discovery doctrine.

The State argues that it would have been unreasonable to expect officers to leave the wallet on the roof of the car. The State further asserts that "[i]f an item is personal in nature, plainly connected to the suspect, and left out in the open, law enforcement should be able to lawfully collect the item. Once the items are lawfully with law enforcement, they may be searched. [Citation omitted.]" If the court accepts the State's assertion, it is essentially saying that officers may search any item an arrestee is "plainly connected to" and which is "left out in the open" without further requirement from the Fourth Amendment. This would run afoul to the Fourth Amendment's premise that warrantless seizures are impermissible without an established exception to the warrant requirement.

*Good-faith exception*

Finally, the State argues that even if the search of Reed's wallet was illegal, the evidence was nevertheless admissible under the good-faith exception to the exclusionary

8

rule. The State correctly notes that although it argued a good-faith exception in the district court, the district court did not rule on this theory.

The exclusionary rule is a judicially created remedy which exists to prevent the use of unconstitutionally obtained evidence in a criminal proceeding against the subject of the illegal search. The rule applies when it would act as a deterrent to prevent law enforcement officers from violating citizens' constitutional rights. See *Hudson v. Michigan*, 547 U.S. 586, 594, 126 S. Ct. 2159, 165 L. Ed 2d 56 (2006); *State v. Pettay*, 299 Kan. 763, 769, 326 P.3d 1039 (2014) (the exclusionary rule is a deterrent measure and not a personal constitutional right). The Fourteenth Amendment makes the exclusionary rule applicable to the states. See *Davis v. United States*, 564 U.S. ___, 131 S. Ct. 2419, 2430, 180 L. Ed. 2d 285 (2011).

The United States Supreme Court has recognized certain exceptions to the exclusionary rule, including when the evidence was obtained by law enforcement acting in reasonable reliance on (1) a search warrant a detached and neutral magistrate issued but was later found invalid; (2) a statute that was later found unconstitutional; or (3) binding appellate precedent that was later overruled. See *Davis*, 131 S. Ct. at 2423-24 (establishing exception involving appellate precedent); *Illinois v. Krull*, 480 U.S. 340, 349-50, 107 S. Ct. 1160, 94 L. Ed. 2d 364 (1987) (establishing exception involving statutes); *United States v. Leon*, 468 U.S. 897, 900, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) (establishing exception involving warrants); *State v. Daniel*, 291 Kan. 490, 498-500, 242 P.3d 1186 (2010), *cert. denied* 131 S. Ct. 2114 (2011) (applying *Krull*); *State v. Hoeck*, 284 Kan. 441, 442, 163 P.3d 252 (2007) (adopting the *Leon* good faith exception). All of these exceptions have the underlying principle that the invalidity of the search or seizure rested on the error of a party other than law enforcement.

Although the State urges this court to hold the exclusionary rule inapplicable in this instance, Reed's case involves no reliance by the law enforcement officers on another

9

party's error. Instead, the error in searching Reed's wallet was committed by law enforcement. The Fourth Amendment violation did not result from reasonable reliance on a later invalidated search warrant, statute, or appellate precedent. Therefore, none of the established exceptions to the exclusionary rule apply.

The State contends that the officers acted "with an objectively reasonable good-faith belief that their conduct was lawful." But even if Carey's motivation for searching Reed's wallet may have been benign, the fact remains that he violated Reed's constitutional rights by searching his wallet without a warrant and without an applicable exception to the warrant requirement. This case presents a situation where the exclusionary rule *should* be applied in order to deter Carey and other law enforcement officers from making the same type of mistake in the future. Thus, the district court correctly applied the exclusionary rule to suppress the evidence found in Reed's wallet. All the evidence stemming from the search of Reed's wallet was properly suppressed as fruit of the initial illegal search. See *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

Affirmed.